Mr. Marshall, the Illinois Supreme Court is convened. Good morning. It's not church, you don't have to respond. This is the commencement of our September 2013 court term. I've been urged by our communications director to note for the public that it's the first time the Illinois Supreme Court has convened in full for an entire court term outside of Springfield since 1897. Our building, as many of you know, is under rehabilitation and renovation. Having first been occupied in 1908, I guess they decided we needed to have a few upgrades. But we're here in our temporary home away from home. It's business as usual, and I want to thank the staff from Springfield and from Chicago for all of their assistance in making this transition. And with that, we will begin and call our first case. Call of the docket is agenda number one, case number 114196, People v. Brown. Counsel for the appellant, please proceed. Good morning, Your Honors. My name is Ben Woloski. I represent the appellant, Tiffany Brown. May it please the court. Ms. Brown endorsed her own name on the back of a check on which she was named PE. By signing her own name, she did not purport to be anyone other than herself. And she did not purport to be acting on anyone else's authority but her own. For those reasons, this court should reverse the appellate court and vacate her subsection A1 forgery conviction. At Ms. Brown's trial, the state presented no evidence about the creation of this check. The state's own witness, Detective Roman, testified that there was no evidence that Ms. Brown created it or that Ms. Brown supplied the signature of Brian Douglas on the front of the check. Now, at trial, Brown admitted that she endorsed the back and that she presented it for deposit. And those facts would satisfy her attempt theft conviction and the subsection A2 forgery conviction, which was vacated below by the appellate court on one-act crime grounds. So what we're saying here is not that a crime was not committed. We're acknowledging that there was an attempt theft and an A2 forgery, but there was no evidence that she literally created this check. Now, below the appellate court... This is under the commercial code. Wouldn't a defendant's real signature be capable of defrauding operation code? It certainly could in some circumstances, but I don't believe that it is capable of defrauding here because she signed her own name and she was only purporting to be the same Tiffany Brown whose name was on the front of the check as the name to payee. There are certain circumstances where we're signing someone else's name where the mere endorsement on the back of the check can satisfy the A1 provision. And those cases include Connell and Anderson and this Court's decision in Epping. However, in that circumstance, it's the defendant signing someone else's name. And the appellate court below totally disregarded this distinction between signing your own name on something and signing someone else's name. In those cases where a defendant signs someone else's name, they're clearly doing so purporting to be someone else. So in cases like Connell and Epping, those subsection A1 forgery convictions were properly upheld. Here, however, Ms. Brown signed her own name. Again, she's not purporting to be anyone other than herself. So that portion of subsection A1 isn't triggered. Mr. Woloski? Yes. What is the significance of the fact that absent the defendant's endorsement of the check, the check could not be cashed or deposited into her account? Is there any significance of that? I don't think there is, Justice Burke. I think this Court's decision in Christensen makes clear that a check, a counterfeit check, is already capable of defrauding even without an endorsement on the back. That was the case in that case where a defendant came to a bank with a counterfeit check that was unendorsed and he was arrested at that point before he even put an endorsement on. And this Court found that the counterfeit check was false from the minute it was created and it was already capable of defrauding at that moment, even without an endorsement. So here, once this check at issue here was literally created, once it was produced, printed up, it was capable of defrauding from that moment forward. Ms. Brown's signature was not needed to make it any more false than it already was. In fact, it couldn't make it any more false because her signature on the back was genuine. It was her real signature, and that's not being disputed by the State. Even if we agree with your argument, counsel, is there any consequence here for your client? And what I mean by that is, as far as A2 was concerned, your client did not contest, right, the forgery under A2, right? Only on one Act I crime grounds. It merged with the attempted theft conviction. Right. And the appellate court agreed. Right. And that's because she was also convicted of attempted theft, which is a Class I felony. Yes. Right. And then, as you correctly pointed out, the others dropped as a result of being one Act, one crime. Yeah. It was the same Act of presenting the check to the bank. I understand the legal significance, but what is the consequence to your client here as we look into your argument with respect to A1? Sure. Well, the legal significance is that she still has this additional conviction, this A1 forgery conviction, on her record. And this court has said in Harvey that a challenge to a lesser concurrent offense is a justiciable issue because it affects the integrity of the judicial process. So the state has argued that this is somehow moot. I don't think that it is. I think we have a valid justiciable claim here, and it's simply a matter of trying to get this excess conviction off of Ms. Brown's record. It's important to note that the state simply didn't prove an element here of the offense. They didn't prove that she made or altered this check in terms of A1 forgery, and so it should be vacated. Did the trial court enter a finding that the defendant knew the check was counterfeited? Yes. The trial court acknowledged that it was counterfeited, but there wasn't any specific finding of fact as to who made the check. So there's no fact findings here that need to be given any deference. A finding that the defendant knew the check was counterfeited? Yes, Justice Freeman. The judge below found that there was an intent to defraud, and I think that's part and parcel with the fact that she knew the check itself was counterfeit. But I don't think that enters into the equation here where we're talking about whether she made or altered it within the terms of subsection A1. As I said earlier, the check itself was already capable of defrauding, even without the endorsement, per this Court's decision in Christensen. The State wants to argue, and the appellate court below found, that the endorsement was needed to complete this counterfeit check. But I think that line of thinking first ignores Christensen, and second, it blurs the line between subsection A1 forgery and subsection A2 forgery. The legislature made a clear distinction between creating a document and issuing it. So that's A1 and A2. And by relying on the endorsement alone to satisfy A1, they've really muddied the waters between what is creating it and what is issuing it. And the endorsement certainly goes toward A2 forgery. And again, we haven't contested that on any other grounds other than one Act I crime grounds. Excuse me. Did the State argue at trial, and this was Ben's trial, that looking at all of the evidence, that there was circumstantial evidence that she, in fact, did make the check? No, Justice Eisenberg. The State didn't present any sort of circumstantial evidence argument at trial. It was honestly, the making aspect was sort of overlooked at trial. There wasn't a whole lot said about it either way. And at the appellate court level, the State took the position that the endorsement alone sufficed to meet the A1 requirements of making or altering. We included in our reply brief a portion of the State's appellate court brief where they said all we're talking about here is the endorsement. That's in the appendix to our reply. And so they're taking a different position here by talking about the circumstantial evidence idea. And I think if you look at this circumstantial evidence the State puts forward in this court, I think you'll find that it's at best speculative. They're looking at things like her college degree, her nine years of experience as a Chicago police officer, and the fact that her sister had attempted to steal her identity on a couple of occasions to say that she made the check. Those facts have nothing whatsoever to do with the creation of the check. Do they go toward intent to defraud? Sure, I think that's a legitimate suggestion that they go toward the intent to defraud. But it doesn't prove at all who printed up this check on a piece of card stock and put Ms. Brown's name on the front of it. In our briefs we put forward a number of cases spanning the past 120 years from courts all over the country, and they've all uniformly agreed that there is no forgery when someone signs their own name. This court has likewise reiterated that understanding as recently as 2009 in the DiFilippo case, where a defendant's conviction for forgery was reversed, where all he did was sign his own name to a letter containing false information. The defendant there was, like here, only purporting to be himself and not anyone else, and so there was no forgery under 8A1. Does it matter in our analysis if there was evidence that she knew that the check was fraudulently made and then she took it to the bank and her endorsement then resulted in the money being paid? No, Justice Cartermire. In DiFilippo – no, I'm sorry, it was in Christensen. This court said that it's immaterial whether, in fact, anyone was defrauded. All that matters is that the check was capable of defrauding once all the terms on the front were filled out. And here the check had all the necessary terms before the endorsement was applied. It had a name to pay, it had a fixed amount of money, it had a date, it had a bank on which it was purportedly drawn. So all the terms were already on the check, and the fact that she knew that it was counterfeit is really immaterial to the question of who made it. The State here doesn't present any other cases from any jurisdiction that affirmatively hold that one commits forgery when they sign their own name on a document. There are circumstances where someone may sign their name as a purported agent for someone, and that may or may not count depending on the law of the particular jurisdiction. Here, under A-1, a false assertion of agency would trigger an A-1 conviction because it's purporting to act on someone else's authority. But as the State repeatedly acknowledged in its brief, there is no false assertion of authority here. This is not an agency case. So Ms. Brown's conviction under subsection A-1 simply cannot stand. If there are no other questions, I would simply ask this Court to reverse the appellate court and to vacate Ms. Brown's subsection A-1 conviction. Thank you. Good morning, Mr. Chief Justice, Honorable Justices of the Supreme Court, Mr. Walowski. I'm Assistant Cook County State's Attorney Mary Needham, and I represent the people of the State of Illinois. May it please the Court, for two reasons. This Court does not need to reach defendant's claim that her knowing endorsement of a fraudulent check does not constitute forgery under subsection A-1 of the forgery statute. The reason is a defendant has never contested her guilt of the greater offense of attempt theft and also her forgery conviction under subsection A-2. There was only one sentence of probation entered, and where one sentence is entered, it should be for the greatest offense. And it's our position that the lesser offense is merged into the greater offense and defendant does not stand convicted of a crime of A-1 forgery. While she was properly found guilty of those counts, the judgment is on the attempt theft and defendant has not challenged that conviction. The second reason that this Court does not need to reach defendant's claim is because the evidence of her guilt of forgery under subsection A-1 is not the only, it does not rest solely on her endorsement. At trial, in the pleadings and at trial, and in response to the defendant's motion for a new trial, the people argued that the evidence established her guilt of making the check on appeal, our position was that the circumstantial evidence established defendant's guilt of subsection A-1 forgery. Can I answer this? Yes. Was that your position at the trial court? Yes, it was. And how can we determine that? Where do we see that in the record? Well, it's in the closing arguments where we argued that she was guilty, and it's also in response to the motion for a new trial where defense counsel argued that we presented no evidence that she made the check. We responded that the evidence in forgery cases is often circumstantial and the evidence established that she made, that was our position, that the circumstantial evidence established it. And that was also our position. Excuse me, Ms. Needham. If that's so, then what facts did you rely on to make that inference, circumstantial? Well, there's many. When a defendant challenges the sufficiency of the evidence of a finding of guilt, all of the evidence is viewed in the light most favorable to the people, and all logical inferences flow in favor of the prosecution. And in this case, you have a defendant who her own story helped contribute to her finding of guilt because it was so contrived that it suggested that it was a story made up before she ever entered the credit union. It's not that she had acquired a degree. She actually had acquired a master's degree in police administration. She was a police officer, and she knew that she could shift the blame to her sister if her crimes were detected, and that's exactly what she did. She was a police officer. Her status as a police officer in the past, she'd been able to assure that her sister faced the consequences of her fraudulent acts. She could say, it's my sister, the felon, who did this to me. And when her story is considered in light of all the other evidence, her gestures, her conduct, her statements, her lies that she told the bank teller, when all of the bank manager, I'm sorry, when all of her conduct is considered in total, it supports the inference that she made the check made out to herself that she presented to the bank. And even if this court finds, well, I just want to say that this is also not, this is consistent with our position in the appellate brief. On pages 18 and 19 of our brief, we argued the circumstantial evidence proved defendant's guilt of A1 forgery. That was the only forgery count defendant was contesting on appeal. And even if defendant's signature is the sole evidence of her guilt of forgery, it still is sufficient to satisfy A1. All of the elements are met here. We know defendant had knowledge that the check was counterfeit. These are not contested. We know she intended to defraud the bank. We know that the document was capable of defrauding. She admits that. And she also, we also know that the document purported to be made by Brian Douglas when Brian Douglas is a non-existent fictitious person. Do you cite any forgery cases that specifically involve counterfeit checks with a genuine endorsement? Have I cited any cases?  There are cases that state, like in Mao, this court found that a signature, a genuine signature on a fraudulent document, it wasn't a check, it was an issuance from the city of Berwyn, a document, a property document, that that constituted forgery because the document was counterfeit, even though it contained the correct signature of the person who was authorized to sign those documents. And in Mao, the question just simply comes down to, does make or alter, do those words exclude a person's genuine signature, even though they're signing their name to a known document, they know it's false and they're trying to defraud someone? And it's our position that make and alter are not so narrowly construed. And in Mao, this court cited with approval ancient treatises of Bishop and Cook, finding that an offender may be guilty of falsely making a document if they sign their own name, if the document is false in material part and calculated to induce another to credit it as genuine. And that's exactly what happened here. Defendant endorsed her name because she wanted that document to be considered genuine. And while the document might have been capable of defrauding someone without its signature, it could not defraud a financial institution because that document cannot be negotiated until it is signed. And defendant, by signing her name, is certainly altering a document capable of defrauding another because a financial institution is not going to accept that check until it is endorsed. And even if there was one, if this court wants to find, as in Christensen, which I believe is a little bit distinguishable because the defendant was not challenging the sufficiency of the evidence there, but was challenging the indictment as void, saying that he was charged with the wrong offense. But even if there was one crime committed with the creation of the check, there was a second forgery when defendant, with knowledge, with intent to defraud, signed her name as an endorsement to the check. When is the forgery complete? When the document is made or does it have to be passed? When the document is made, that is a forgery. Passing it is another form of forgery. So when you talk about made, you're talking about not only the front of the check but the endorsement. Correct. Also, there can be many contributors to a counterfeit document. And defendant, even if she was the last person, and this is just if this court accepts the premise that she didn't make the check, that the sole evidence of her guilt is her endorsement. That was her contribution. That was altering this document so that it could be capable of defrauding the financial institution where it would be accepted. The statute has two parts, has five parts, actually. But we are looking at, she was charged with one and two. So clearly the legislature wanted to draw a difference between the making of the forged document and the issuing or delivering of the forged document. So it appears that your argument is the fact that she was delivering this forged document, it doesn't matter that there's a different charge for the making. There seems to be two different ideas. One is making and one is delivering. Two different theories for the same offense. For the same act. The same act. No, they're different acts because defendant can't deliver unless she signs it. In this instance, the counterfeit check. So that is a written contribution that alters or makes the document, that makes it capable of being delivered. Is it necessary to look at the circumstantial evidence? In this case, I think you pointed to some circumstantial evidence that surrounds the making or altering of the check. Is that what would be required in every case? Well, forgery is a crime that's committed in secret. You're not always going to be able to produce or catch someone in the act of doing it. That's the whole point. They're trying to defraud people. So circumstantial evidence can be and it certainly is sufficient enough to establish the guilt of forgery. It might not always be the case, but it's certainly acceptable that it is the case, that the evidence is circumstantial. Counsel, I'm trying to make sure I'm tracking your argument. You said the endorsement itself is an alteration. I believe that that is a making or altering of a document. But what is altered? I mean, what's the change? Alteration means it's A, and then it changes to B. Right, right. Well, what's the alteration? Well, I guess it contributes to the making of this fraudulent document, but it also alters a document from one that can't be delivered to one that can be. But it doesn't alter in the sense that it's altering a true document to be a false document. Does the defendant have to know then that it was a false document when she puts her endorsement on there? Yes. And was there evidence at trial that she was aware of that? Well, the evidence proved it, and she certainly hasn't contested that she knew the document was fraudulent, was counterfeit. And that she knew that. Correct. Take me through what you're requesting that we do. You say in your brief that we don't need to reach the defendant's claim that her knowing endorsement of the check constituted forgery under A-1 because there's no question that she committed forgery under A-2. But the appellate court set aside A-2. Is that correct, based on one crime? It did. And you're suggesting that we, what, reinstate the A-2 and it doesn't make any difference because of the theft? Correct. I'm sorry to interrupt you. The forgery convictions were just the vehicle by which she committed attempt theft, which is the greatest offense, which is the offense that should stand. There was only one sentence. So you don't care whether the forgery convictions. Correct. So what's the purpose of arguing that there was a making or altering or issuing or delivering? So that we can respond to defense argument. But it's of no consequence to this defendant because she stands convicted of attempt theft. And she's not contesting that? Correct. For these reasons, we ask this court to affirm the appellate court's finding that defendant is guilty of forgery under A-1. The finding of guilt was properly based on the evidence and affirm her conviction for attempt theft. Thank you. Thank you. Any rebuttal? Just a couple quick points, Your Honors. First, about the mootness, on Ms. Brown's probation minimus, it's on page C-109 of the common law record, it lists, among other things, the attempt theft and the A-1 forgery conviction. It's still on her record. If you go check the circuit court computer, it would show that she still stands convicted of this. This is something that's actually on her record. It's a justiciable issue because it affects the integrity of the judicial process. There's nothing moot about this case. You did not raise an argument that this conviction, as you described it, should fall because of the same reason as A-2. In other words, one act, one crime. Well, the creation of the check would be a separate physical action from presenting it for delivery. So I think there are actually two distinct physical actions. I don't see a one act, one crime issue here. It really is a matter of the sufficiency. So was there judgment on this count? Yes. All of the counts included A-1 forgery, A-2 forgery, the attempt theft, and then there's some official misconduct convictions as well. All of them are listed on the minimus that's in the record. As far as the alteration aspect of the statute, the alteration has to be done in such a manner as it purports to have been done by another or by authority of someone who didn't give such authority here. Again, all Ms. Brown has done is signed her own name. She's not pretending to be anyone other than herself. There's no Tiffany M. Brown that's out there that was supposed to be the name to pay you this check. There's no confusion about which Tiffany Brown we're talking about. I asked opposing counsel about circumstantial evidence. Do we look at the circumstantial evidence surrounding the signing of the check, the endorsement of the check, to see whether or not there's enough evidence there that that is an alteration or is your position is regardless of what circumstantial evidence surrounds it, it could never be an alteration? Well, I think we can look at the circumstantial evidence, and as the state argues in their brief, circumstantial evidence is often used in forgery cases because we don't know. Wasn't there a case here where she said a lawyer would clear this whole thing up and that proved to be false? Yeah, that was part of the narrative of Ms. Brown's position about how this check came into her possession and how she ended up at the bank with it. Ultimately, though, the circumstantial evidence here doesn't answer the question of who made this check. It doesn't tell us whether she printed it, whether her sister printed it, whether they were in on it together, or whether some third party that we don't know about actually made it. Again, things like her college background or her time with the police department, even her sister's attempts to steal her identity in the past don't have anything to do with the creation of this check. So the circumstantial evidence doesn't get us to the point where we can say beyond reasonable doubt that she produced this check. The State points to People v. Mao, this Court's 1941 decision. In that case, the Court looked at a 1937 version of the forgery statute, which prohibited creating false records of a public nature. So the city comptroller there created a false document, and yes, it had his name on it, but it was the fact that it was a public document that really brought that within the ambit of that version of the forgery statute. If we apply the same facts from Mao to this version of the statute, we get the DiFilippo decision. It's a matter of this has the defendant's own name on it. He's not passing it off as anyone other than himself. There's no forgery. Finally, the State argued that this cannot be negotiated without a signature. Well, again, the negotiation goes toward A2 forgery. We're not worried about whether it can be negotiated. We're looking at whether it's apparently capable of defrauding. That's the key language in the statute. And again, Christensen says it's already capable of defrauding as long as the front's filled out. You don't need an endorsement. There wasn't an endorsement there, so it was already capable of defrauding before Ms. Brown applied her signature on the back. For those reasons, we ask that this Court would vacate Ms. Brown's subsection A1 forgery conviction. Thank you. Thank you. Case number 114196, People v. Brown, taken under advisement agenda number one. Mr. Walowski, Ms. Needham, we thank you for your arguments today.